UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| Kelly Stiles and Kenny Fisher for and as parents and next friends of the minor child, D.S., )<br>)<br>)<br>)<br>*Plaintiffs*, )<br>)<br>v. )<br>)<br>Grainger County Schools, *et al.*, )<br>)<br>*Defendants*. ) | No.: 3:13-CV-7-PLR-HBG |

## **Memorandum Opinion**

This is a school bullying case. During his seventh and part of his eight grade years at Rutledge Middle School, Dustin Stiles was involved in a number of altercations. Mr. Stiles and his mother claim that he was subjected to bullying, sexual harassment, and acts of violence from other students. When Mr. Stiles and his mother reported different incidents they believed to be bullying to the school, administrators watched security camera footage, interviewed Mr. Stiles and witnesses, took notes, and punished those other students who were found guilty of wrongdoing. Nearly all of the alleged incidents involved different students, as opposed to repeat problems with one or a small handful of offenders.

About halfway through his eighth grade year, Mr. Stiles got into a physical altercation in a bathroom with two other students (both of whom had never been involved in altercations with Mr. Stiles before). The school administrators investigated the

incident and punished the two other students with in-school suspension. Mr. Stiles never went back to Rutledge Middle School; he transferred to a private school.

Mr. Stiles and his mother brought this lawsuit against the school, county, administrators, school board, members of the school board, police department, and police chief alleging numerous state and federal claims, including violations of Mr. Stiles's due process and equal protection rights and violations of Title IX. The defendants have filed motions for summary judgment, and for the reasons stated below, the defendants' motions will be granted. This case will be dismissed.

## I.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer,* 301 F.3d 937, 942 (6th Cir. 2002). Courts may not resolve genuine disputes of fact in favor of the movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (vacating lower court's grant of summary judgment for "fail[ing to] adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all

justifiable inferences are to be drawn in his favor") (internal quotations and citations omitted).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id*.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id*. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id*. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## II.

Despite Federal Rule of Civil Procedure 8(a)'s clear direction that pleadings should contain a short and plain statement of the claim, the plaintiffs' 70-page complaint is anything but. In fact, the first eleven pages are one continuous block quote on the

3

psychology of bullying. The complaint is difficult to follow. Most of its allegations are made against the defendants collectively, making it unclear what specific wrongdoing each defendant is being accused of committing. The facts are also not in any sort of chronological order, instead jumping back and forth through time. The plaintiffs' response in opposition of summary judgment does not help at all; in fact, it appears to be a misguided attempt by the plaintiffs to so inundate the pleadings with facts (many of which are inadmissible or unsupported by the record), conclusory statements, allegations, and claims that the Court will give up sorting it all out and just assume there are material factual disputes sufficient to survive summary judgment.

Dustin Stiles is now a seventeen year-old junior at Jefferson County High School. Mr. Stiles is originally from St. Louis, Missouri; however, Mr. Stiles testified that family left the St. Louis area because his school was predominantly black. According to Mr. Stiles, "[b]eing one of the only white kids, [he] would have been a minority in the school up there, so [his family] moved . . . to avoid that trouble." [R. 109-5, Dustin Stiles Dep., Page ID 1000]. Apparently, the family planned to move to Gulf Shores because they had friends there, but they "got lost" on the way, stopped at a firehouse in the Bearden area to ask for directions, and one of the firefighters told them not to go to Gulf Shores, but to stay in Knoxville for the night. [*Id.* at 1001-02]. They followed the firefighter's advice, liked Knoxville, and moved to town within the month. [*Id.* at Page ID 1002-03]. That firefighter was Kenny Fisher, and he is now Ms. Stiles boyfriend.

After moving to Knoxville, Mr. Stiles completed fifth grade at Cedar Bluff elementary school. [*Id.* at Page ID 1000]. Mr. Stiles then attended West Valley Middle

4

School, where his alleged bullying troubles began. According to Mr. Stiles, "[t]here was one kid there[,] [a]nd my mom didn't like it there, so she told me to go to Grainger County."[1] [*Id.* at Page ID 1015]. Accordingly, Mr. Stiles transferred to the Grainger County School System in November 2009 where he enrolled in Joppa Elementary School and completed his sixth grade year.

The first of Mr. Stiles's claims relate to his time at Joppa. He contends he was bullied and harassed by some of the other students. The complaint further alleges that the plaintiffs brought this bullying to the attention of the administration who "failed to cure the problem or take reasonable action to protect [Dustin Stiles]." [R. 41, Amended Complaint, ¶ 79]. The only defendant in this case actually related to Joppa is Pam Roach, who was the principal of Joppa when Mr. Stiles was a student there. The only specific allegation relating to Ms. Roach is that Mr. Stiles's mother met with Pam Roach "who would not act to assist her, and would not discuss the bullying incidents with her." [*Id.* at ¶ 113].

Mr. Stiles attended Rutledge Middle School for seventh grade the following year, where the bulk of the complaint's allegations take place. The complaint does not lay out the allegations in chronological order (or any apparent order at all), and it frequently refers to the defendants collectively despite the fact that all of the defendants could not have been involved in each allegation (i.e. they worked at a different school). This makes

---

[1] Mr. Stiles testified that the bullying problem at West Valley was "[j]ust some kid calling me names and pushing me." [*Id.*]

5

cataloging Mr. Stiles's various complaints difficult. Nevertheless, the sequence of events at Rutledge Middle School appears to be as follows:

- In August of Mr. Stiles's seventh grade year, one student pushed another student in the hallway, and that student fell into Mr. Stiles, whose lip was "busted" as a result. Ms. Stiles then came to the school's office to inform them that Mr. Stiles had had some problems in his sixth grade year that she wanted them to be aware of. The assistant principal, Lynn Jones told her that she would inform the teachers, and they would keep an eye out to make sure there weren't any more issues there. [R. 101-7, Lynn Jones Dep., Page ID 797-98];

- The following February, Mr. Stiles was involved in two separate incidents. In the first, he and another student, C.B., got into a verbal altercation. When C.B. touched the shoulder of Mr. Stiles's jacket, Mr. Stiles got up and pushed C.B. to the floor. [*Id.* at 802]. The teacher sent both students to the assistant principal's office where they both received a warning. In the second incident, a student called Mr. Stiles a number of derogatory names, including "mother f***er" and "faggot," and he "flipped" the hood on Mr. Stiles's jacket. Lynn Jones investigated the incident, interviewed other students to confirm that his happened, and punished the offending student with two days of in-school suspension. [*Id.* at 24-25, 28-30].

- On March 1, 2011, C.B. (the same student from the February incident) allegedly punched Mr. Stiles in the ribs. The gym coach counseled Mr. Stiles and C.B. to cease that type of behavior.

- On May 11, 2011, after Mr. Stiles told another student he was going to "whip his butt," a group of four students began shoving Mr. Stiles around from person to person. Principal Roger Blanken investigated the incident and punished three of the students with three days of in-school suspension. The fourth student got one day of in-school suspension based on his disciplinary record.

- The final incident of Mr. Stiles's seventh grade year occurred while playing a basketball game in the gym. A special needs student picked Mr. Stiles up and pushed him head first into another student. The special needs student was upset that he may have injured Mr. Stiles, and he helped Mr. Stiles get to the nurse. The student was not punished because assistant principal, Lynn Jones, determined that the student did not mean to hurt Mr. Stiles.

- The day after the incident with the special needs student, Ms. Stiles went to the Rutledge Police Department to complaint about her son's treatment at school. Mr. Stiles remained in the lobby while Ms. Stiles and one of her friends went back to

6

speak with Kip Combs[2] and Police Chief Richard McGinnis. Ms. Stiles told them that she was not satisfied with the way the school was handling her complaints. McGinnis listened to their complaints, spoke with Ms. Stiles about helping her son build self-esteem, and gave Dustin Stiles his business card and personal cell phone number in case he ever needed his assistance.

- There were several incidents the following school year. In September 2011, at the beginning of Mr. Stiles's eighth grade year, while playing a game in the gym, Mr. Stiles fell over. Two students came over and one of them, either using his knee or his arms, pretended to conduct CPR on Mr. Stiles's chest. Kip Combs went to the school to investigate the event, watched the video recorded by the school's security camera, and determined that the students were horse playing, and that one of them had taken it a little too far. The students were warned to keep their hands to themselves.

- The week after the CPR incident, Ms. Stiles called Lynn Jones to complain that one of the students involved in that incident was harassing Mr. Stiles. McGinnis and school officials interviewed the students and Mr. Stiles who claimed that his mother had blown things out of proportion, that the student who was allegedly harassing him was simply unhappy with him for making such a big deal out of the CPR incident. [R. 101-7, Jones Dep., Page ID 847-50]. Mr. Stiles also informed Ms. Jones and Mr. McGinnis that the boy from the CPR incident had just been playing around, and that he had apologized. [*Id.* at Page ID 849].

- On November 10, 2011, Ms. Stiles reported that a student had called Mr. Stiles a "faggot" and "threw him over a desk." When administrators investigated the complaint, a witness from the room did not remember any of that happening, and Mr. Stiles said he did not have have any problems with the student—that they were friends now.

- Finally, on January 17, 2012, there was a physical altercation in a bathroom where a witness reported that two students picked up, grabbed, and kicked Mr. Stiles. Kip Combs and Lynn Jones thoroughly investigated the incident and punished the perpetrators. One of them received eight days of in-school suspension. The second student, who had a more limited role and no prior offenses, received three days of in-school suspension. Following this incident, Dustin Stiles never returned to Rutledge Middle School. He transferred to Berean Christian Academy.

---

[2] Kip Combs was the disciplinary supervisor for the Grainger County school system.

On January 5, 2013, the plaintiffs filed a complaint in this Court. They amended the complaint on October 14, 2013, and asserted claims against:

A. Grainger County Schools;
B. Grainger County, Tennessee;
C. Grainger County Board of Education;
D. Edward Jarnagin, Director of Schools for Grainger County;
E. Kip Combs, Disciplinary Supervisor for Grainger County Schools;
F. Roger Blanken, Principal of Rutledge Middle School;
G. Darrell Livesay, Director of Grainger County Board of Education, now deceased and dismissed from the case;
H. Pam Roach, Principal of Joppa Elementary;
I. Lynn Jones, Assistant Principal of Rutledge Middle School;
J. the Rutledge Police Department;
K. Richard McGinnis, Chief of the Rutledge Police Department;
L. G.M., a minor child,
M. A.C., a minor child; and
N. the Township of Rutledge, Tennessee.

[R. 41, Amended Complaint, Page ID 369]. The claims asserted are even more wide ranging than the list of defendants, and nearly all the claims are asserted collectively against all of the defendants as opposed to against specific defendants. The claims include:

A. Discrimination on the basis of sex, in violation of Title IX, 20 U.S.C. § 1681;
B. Violation of Mr. Stiles's Fourteenth Amendment right to equal protection, brought under 42 U.S.C. § 1983;
C. Deprivation of Mr. Stiles's "rights to life, liberty, [and] bodily integrity" in violation of the due process clause of the Fourteenth Amendment;
D. Failure to train brought under § 1983;
E. Intentional Infliction of Emotional Distress;
F. Negligence;
G. Assault and Battery;
H. Willful Tort of a Minor Child;
I. Negligent Infliction of Emotional Distress;
J. Malicious Harassment;
K. "Complaint Against Rutledge Police Department for Wrongs of Police Officers;" and
L. *Respondeat Superior*.

8

[*Id.* at Page ID 419-44]. Some of the claims are asserted in the names of Kenny Fisher (who has since been dismissed) and Kelly Stiles. For example, Kelly Stiles asserts that she has incurred medical and other expenses because of A.C. and G.M.'s actions, for which she seeks recovery. Other claims are asserted by the plaintiffs collectively, including a claim for $1,200,000 in damages the defendants owe "to the Plaintiffs" for negligent infliction of emotional distress.

### III.

*i.* *Grainger County Schools, Grainger County, Tennessee, and the Rutledge Police Department*

The Grainger County Schools and Grainger County, Tennessee, are not proper parties to this action. The duties and powers of the local administration of the schools in Grainger County belong to the local board of education. *See* Tenn. Code Ann. §§ 49-2-201 *et seq.* The proper entity for suit is the Grainger County Board of Education, who is also a defendant in this action. *See Horsley v. Tenn. Dept. of Children's Services*, 2013 WL 1412343, at * 3 (M.D. Tenn. April 8, 2013). Accordingly, Grainger County, Tennessee, and the Grainger County Schools will be dismissed as parties.

Similarly, the federal district courts in Tennessee have consistently held that police departments are not suable entities. *See Mathes v. Metropolitan Government of Nashville and Davidson County*, 2010 WL 3341889, at * 2 (M.D. Tenn. Aug. 25, 2010) (collecting cases); *Moore v. Chattanooga Police Dep't,* 2008 WL 3896114, at *3 (E.D. Tenn. Aug. 19, 2008) ("The Chattanooga Police Department is not a municipality but is merely a municipal agency or department of the City of Chattanooga rather than a separate legal

9

entity."). Because it is not a suable entity, the Rutledge Police Department's motion for summary judgment will be granted.

### ii.   *G.M. a minor child, A.C. a minor child, and Rutledge, Tennessee*

These parties have never been served. Federal Rule of Civil Procedure 4(m) provides that a court must dismiss an action if a defendant is not served within 120 days of the complaint being filed. A court may do this *sua sponte*, or on motion by a party. *See, e.g., Smith v. Bd. of Cnty. Comm'rs of Fairfield Cnty, Ohio*, 149 F.3d 1184 (6th Cir. 1998). The amended complaint was filed on October 14, 2013, and the plaintiffs have not served the town of Rutledge or either of these minor children. Accordingly, all of the plaintiffs' claims against these parties will be dismissed.

### iii.  *Pam Roach*

In the plaintiffs' response in opposition to the defendants' motions for summary judgment, they state that they have agreed to dismiss Pam Roach. [R. 154, Response in Opposition, Page ID 1822]. Accordingly, she will be dismissed.

### iv.   *Richard McGinnis*

While the plaintiffs periodically include Chief McGinnis's name in their allegations, the facts specifically relating to him are few. As far as the Court can tell, Chief McGinnis only interacted with Mr. Stiles a handful of times. Chief McGinnis's first appearance in this case occurs in May of 2011 when Ms. Stiles and a friend went to the police station to complain that the school was not adequately handling Ms. Stiles's complaints. Mr. Stiles testified in his deposition that he does not know what the adults talked about at the meeting. He "just kind of sat up front and waited on them to be

10

Case 3:13-cv-00007-PLR-HBG  Document 165  Filed 03/23/15  Page 10 of 18  PageID #: 2021

done." [R. 159, Dustin Stiles Deposition, Page ID 1973]. After the adults met, Chief McGinnis wrote his personal cell phone number on his business card and gave it to Mr. Stiles, telling him to call if he ever needed anything. [*Id.* at Page ID 1975]. Mr. Stiles never called Chief McGinnis.

The next reference to Chief McGinnis occurs in the plaintiffs' statement of facts, where the plaintiffs claim Chief McGinnis himself bullied Mr. Stiles by telling him he would get in trouble if he exaggerated or lied about being bullied. The plaintiffs also say Chief McGinnis "was there when [Mr. Stiles] was talking to the principals," but they don't say why that matters or even what they were discussing. [R. 151, Plaintiffs' Statement of Facts, Page ID 1473].[3] The plaintiffs make various other claims relating to Chief McGinnis, many of which are irrelevant, asserted without context, or are not supported by the record. In sum, apart from their vague, all-encompassing allegations, the plaintiffs have failed to state any legal basis for their federal claims against Chief McGinnis, or to even point to specific (and admissible) facts in the record that could support a constitutional claim, however inartfully pled. Chief McGinnis is entitled to summary judgment on the plaintiffs' federal claims.

*v.* ***Edward Jarnagin***

Apart from being listed as a defendant, there are no allegations in the amended complaint specific to Edward Jarnagin, the Director of Schools for the Grainger County School District. "Each government official, his or her title notwithstanding, is only liable

---

[3] The plaintiffs' "Statement of Relevant Facts" is overstuffed with irrelevant, inadmissible facts. A great deal of the facts are supported only by hearsay, sometimes double or triple hearsay, and many of the facts are directly contradicted by the plaintiffs' prior sworn deposition testimony.

11

for his or her own misconduct." *Iqbal,* 556 U.S. at 677; *see also Marcilis v. Twn. Of Bedford,* 693 F.3d 589, 596 (6th Cir. 2012). As a result, "damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violates the asserted constitutional right." *Lanman v. Hinson,* 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery" against individual actors for alleged constitutional violations. *Gilmore v. Corr. Corp. of America.,* 92 F. App'x 188, 190 (6th Cir. 2004); *see also Frazier v. Michigan,* 41 Fed. Appx. 762, 764 (6th Cir. 2002) (affirming dismissal where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights").

A plaintiff must "allege that a specific defendant performed a specific act that suffices to state a [federal civil rights] claim." *Kesterson v. Moritsugu,* 1998 WL 321008 at *4 (6th Cir. 1998). Courts appropriately dismiss a complaint where it merely identifies defendants as holding a particular position without specific allegations concerning acts performed by each individual defendant "that resulted in a deprivation of [plaintiff's] constitutional rights." *Marcilis*, 693 F.3d at 605. Simply "lumping all the defendants together" in each claim and providing no factual basis to distinguish their conduct fails to satisfy the minimum standard—that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. *Id.*

In the plaintiffs' response in opposition of summary judgment, the plaintiffs contend that Mr. Jarnagin "did, through his failure to properly enforce, oversee and participate where he is directed by policy, implicitly authorize, approve of, or knowingly acquiesce in the unconstitutional conduct perpetrated by these defendants upon [Mr. Stiles]." [R. 154, Response in Opposition, Page ID 1828]. Apart from this conclusory assertion, the only facts cited in the plaintiffs' response regarding Mr. Jarnagin relates to a statement in Rutledge Middle School Principal Roger Blanken's deposition where Mr. Blanken states that he believes he informed Mr. Jarnagin of one of the incidents involving Mr. Stiles, and that Mr. Jarnagin concurred in hiring an individual in January 2011 to monitor the environment around Mr. Stiles.

To the extent the plaintiffs premise Mr. Jarnagin's liability on a failure to act, they cannot prevail. It has long been established that supervisory liability cannot attach where allegations of liability are based upon a mere failure to act. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Instead, active unconstitutional behavior is required. *Id.* Accordingly, because the only specific action alleged with respect to Mr. Jarnagin is his concurrence that the school should expend resources to hire an individual to shadow the plaintiff and help corroborate his claims, a reasonable jury could not find in favor for the plaintiffs. Mr. Jarnagin is entitled to summary judgment on the plaintiffs' federal claims.

vi.  *Roger Blanken, Lynn Jones, and Kip Combs*

At the heart of the plaintiffs' complaint appears to be a belief that these three defendants did not sufficiently punish the students who had altercations with Mr. Stiles. It is unclear, though, what would have satisfied the plaintiffs. The administrators

13

thoroughly investigated each incident, watched security videos when available, interviewed parties and witnesses, and punished the other students when they found punishment warranted. There is no dispute over these facts. Nevertheless, the plaintiffs claim that "these defendants did not deal with students in matters of discipline, in a fair and constructive manner as is required by [school policy]." [R. 154, Response in Opposition, Page ID 1837]. This statement is irreconcilable with the undisputed fact that the students involved in incidents with Mr. Stiles were punished, with the punishments ranging from verbal warnings to eight days of in-school suspension depending on the circumstances. What exactly the plaintiffs wanted these administrators to do is not clear, especially considering almost all of the incidents involved different students.

The plaintiffs' equal protection, due process right to bodily integrity, and Title IX claims against these defendants are all without merit. To establish an equal protection violation, the plaintiffs must show that Mr. Stiles was treated differently by these administrators than other similarly situated students. The plaintiffs have introduced no such evidence. As for the due process right to bodily integrity claim, the Sixth Circuit has held that this type of claim fails where the plaintiff was harmed by other students instead of government or school officials acting under color of law. *See Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999). Moreover, the courts have consistently held that there is no "special relationship" between schools and their students that would elevate an obligation to ensure a student's safety "to the rank of a constitutional duty." *Id.* (citing *Doe v. Claiborne County*, 103 F.3d 495, 510 (6th Cir. 1996)). "The purpose of the Due Process clause is to protect people from the state, not to ensure that the state protects

14

them from each other." *Id.* (quoting *DeShaney v. Winnebago County DSS*, 489 U.S. 189, 196 (1989)) (internal quotation marks and punctuation removed). Finally, Title IX applies to *institutions* that receive federal funds, and "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 247 (2009) (emphasis added). Because the plaintiffs have not established a constitutional violation attributable to these defendants, Roger Blanken, Lynn Jones, and Kip Combs are entitled to summary judgment on the plaintiffs' federal claims.

### vii. *Grainger County Board of Education*

The final defendant is the Grainger County Board of Education. For the reasons discussed above, the plaintiffs' equal protection and due process claims fail as a matter of law. The plaintiffs also assert a failure to train or "inaction" theory relating to the Board of Education; however, for a plaintiff to prevail with such a claim, the failure to train must have been the moving force behind the plaintiff's constitutional deprivations. *Doe v. Claiborne County* 103 F.3d 495, 508 (6th Cir. 1996). Because there have been no constitutional deprivations in this case, the Board of Education cannot be liable on a failure to train or inaction theory.

Unlike the individual defendants, a school board can be found liable under Title IX. To establish a *prima facie* case of student-on-student sexual harassment under Title IX, a plaintiff must show that:

  a) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school,

15

      b) the school had actual knowledge of the sexual harassment; and
      c) the school was deliberately indifferent to the harassment.

*Patterson v. Hudson Area Schools* 551 F.3d 438, 444-45 (6th Cir. 2009); *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999). A school is deliberately indifferent under Title IX "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999). In *Davis*, the Supreme Court stated that "[f]ailure to take any disciplinary action despite reports of repeated sexual harassment rises to the level of deliberate indifference. In less obvious cases, the proportionality of the school's response in light of available information lies at the heart of the indifference analysis." *Id.* "In appropriate cases, there is no reason why . . . on a motion to dismiss, for summary judgment, or for a directed verdict, [courts] could not identify a response as not 'clearly unreasonable' as a matter of law." *Id.* at 649.

    The plaintiffs in this case have not demonstrated deliberate indifference. While they may dislike the punishments meted out by the administration in response to Mr. Stiles's incidents, it is abundantly clear from the record that school administrators responded to the plaintiffs' complaints, interviewed witnesses, kept notes, and took measures to punish culpable students. Very few of Mr. Stiles's incidents involved the same perpetrators, making it difficult for the Court to imagine what the plaintiffs would prefer the administration to have done differently. In fact, the plaintiffs never say what a reasonable response would have been. Because the plaintiffs cannot demonstrate a

"clearly unreasonable" response, they cannot establish deliberate indifference and their Title IX claim fails as a matter of law.

### viii. *State Law Claims*

Title 28 § 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over state law claims when they raise novel or complex issues of state law or, in exceptional circumstances, there are compelling reasons for declining supplemental jurisdiction. The Tennessee Governmental Tort Liability Act provides in pertinent part that "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter. . . ." Tenn. Code Ann. § 29-20-307. This expresses a clear preference from the Tennessee legislature that claims under Tennessee's Governmental Tort Liability Act be handled by state courts. *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000). Accordingly, this Court declines to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims.

## IV.

In summary, because they are not proper parties to this action, all of the plaintiffs' claims, federal and state, asserted against Grainger County, Tennessee, the Grainger County Schools, and the Rutledge Police Department are **Dismissed with prejudice**. Because G.M., A.C., and the Rutledge Township were never served, they are **Dismissed without prejudice**. All claims asserted against Pam Roach are **Dismissed with prejudice** per the plaintiffs' agreement.

Richard McGinnis's motion for summary judgment [R. 101] is **Granted**. All federal claims asserted against Chief McGinnis are **Dismissed with prejudice**; and all

17

state law claims asserted against him are **Dismissed without prejudice**. The motion for summary judgment filed by the Grainger County Board of Education, Edwin Jarnagin, Kip Combs, Roger Blanken, and Lynn Jones [R. 109] is **Granted**. All claims, federal and state, asserted against Edwin Jarnagin are **Dismissed with prejudice**. The plaintiffs' federal claims against the Grainger County Board of Education, Kip Combs, Roger Blanken, and Lynn Jones are also **Dismissed with prejudice**. Finally the plaintiffs' state law claims against the Grainger County Board of Education, Kip Combs, Roger Blanken, and Lynn Jones are **Dismissed without prejudice.** There being no remaining defendants, this matter will be **Dismissed in its entirety**.

_____
**UNITED STATES DISTRICT JUDGE**